**STATE OF WEST VIRGINIA**

*In re* **A.M.**

**No. 20-0180** (Harrison County 18-JA-1)

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.M., by counsel Susan P. Morris, appeals the Circuit Court of Harrison County's January 15, 2020, order terminating her parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Melinda C. Dugas, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in modifying disposition and terminating her parental rights when less-restrictive alternatives existed.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in January of 2018. According to the DHHR, petitioner and the child's father were arguing in their bedroom and could be overheard by those present in the home, including the child. Petitioner came out of the bedroom and removed a rifle from a gun case. Petitioner cycled the action to ensure a round was chambered, commented "yep, there's one in there," and then reentered the bedroom and shot and killed the child's father. A.M. corroborated this information and further reported that she had observed her father lying on the floor in a pool of blood. The DHHR also alleged that drug paraphernalia was found in the home. Petitioner was arrested and charged with murder. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

At an adjudicatory hearing held in July of 2018, petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that she abused the child by shooting her father in the home while she was present, subjecting her to domestic violence, and exposing her to a drug-endangered environment. Later that month, the guardian filed a report requesting that the circuit court impose disposition pursuant to West Virginia Code § 49-4-604(c)(5).[2] According to the guardian, A.M. was of an age to understand the context of the proceedings and the circumstances. The guardian indicated that the child was not ready to make any decision with regard to the disposition of petitioner's parental rights but had expressed that she wanted her parents' names to remain on her birth certificate. The guardian opined that, given the circumstances, an "Alternative 5 Disposition" was appropriate and could be modified at a later date should that be necessary. A Court Appointed Special Advocate ("CASA") also filed a report recommending disposition pursuant to West Virginia Code § 49-4-604(c)(5). The CASA indicated that the child had expressed that she did not want petitioner's parental rights terminated and that the child did not put petitioner "entirely at fault."

In December of 2018, the circuit court held a dispositional hearing. After hearing the recommendations of the DHHR and the guardian, the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5). Thereafter, in March of 2019, petitioner was convicted of voluntary manslaughter. At her sentencing hearing held in June of 2019, petitioner was sentenced to a determinate term of fifteen years of incarceration. In July of 2019, the DHHR and the guardian filed a joint motion to modify disposition, alleging that there had been a material change of circumstances. Specifically, the parties recounted petitioner's recent conviction and sentence, noting that reunification between the child and petitioner was no longer possible before the child would turn eighteen years old. They further reported that the child had developed a bond with her foster parents and desired to be adopted by them.

In October of 2019, the circuit court held a hearing on the motion to modify disposition. A.M. testified that she desired to be adopted by her foster parents. A.M. explained that, at the time of disposition, she was going through an emotional time and did not want to make a "harsh" decision regarding the status of petitioner's parental rights. A.M. testified that she wanted to wait and see how she felt later, "and it's later." Since that time, A.M. had developed a strong bond with her foster parents and decided that she wanted a more permanent relationship with them through adoption. A.M. described that, under her legal guardianship, she had "a fear that . . . someone could just drive into the driveway and take [her]." To A.M., adoption by her foster family meant that she would gain a more stable environment and truly become one of the family by taking their last name. Although A.M. testified that she loved petitioner very much, she believed that adoption by her foster parents would be in her best interests. Also, A.M.'s therapist testified that she and A.M. had discussed the issue of adoption at length throughout several sessions. The therapist stated that

---

[2]West Virginia Code § 49-4-604(c)(5) provides that

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

A.M. had not "gone back and forth" over the matter and had put "a great deal of thought" into what she wanted. Further, the therapist opined that A.M. was not taking the matter lightly and had the mental capacity to make the decision. After the therapist's testimony, the circuit court continued the matter and instructed the therapist to author a report.

The circuit court entered an order modifying disposition and terminating petitioner's parental rights to A.M. in January of 2020. The circuit court found that, at the time of the dispositional hearing, there was uncertainty regarding the outcome of petitioner's criminal trial. Since the prior dispositional hearing, petitioner had been convicted of voluntary manslaughter and sentenced to fifteen years of incarceration. The circuit court noted that petitioner would not be eligible for parole until October of 2021, and the granting of parole to petitioner was not guaranteed. The circuit court found that A.M. was clear and logical in expressing her wishes during her testimony, had spoken to numerous individuals regarding her desire to be adopted by her foster family, and had reiterated numerous times that she longed for the security and ties of a traditional family unit. Based on the foregoing, the circuit court concluded that there had been a change in circumstances and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner appeals the January 15, 2020, order modifying disposition and terminating her parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in modifying disposition and terminating her parental rights when there was not clear and convincing evidence of a material change of circumstances or that modification was in the child's best interest. Petitioner states that the parties and the circuit court agreed that disposition pursuant to West Virginia Code § 49-4-604(c)(5) was in A.M.'s best interest at the time of the dispositional hearing. According to petitioner, the guardian's and the DHHR's basis for requesting modification—petitioner's

---

[3]As noted above, the child's father is deceased. The permanency plan is adoption by her foster family.

conviction and sentence—was not valid because they knew of her incarceration at the time of disposition, the nature of her offense, and that she could be incarcerated for a long time. Moreover, petitioner states that incarceration alone does not cause a parent to forfeit his or her parental rights. Petitioner also argues that A.M.'s desire to be adopted is not sufficient to support a modification of disposition. Petitioner argues that the circuit court was not obligated to comply with A.M.'s wishes, that the circumstances had not changed such that termination of petitioner's parental rights was now in A.M.'s best interest, and that A.M.'s expressed reasons for wanting to be adopted can be achieved through the previously-imposed disposition. Having reviewed the record, we find no error.

Pursuant to West Virginia Code § 49-4-606(a),

[u]pon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.

The record demonstrates that a material change in circumstances occurred. Subsequent to the dispositional hearing, petitioner was convicted of voluntary manslaughter and was sentenced to a determinate term of fifteen years. While petitioner claims that the parties knew of her incarceration at the time of the dispositional hearing, the circuit court noted that the results of petitioner's criminal proceedings were uncertain at that time. In fact, petitioner could have been acquitted of the crime and released from incarceration. Now, petitioner will not become eligible for parole until October of 2021 and, therefore, cannot be reunified with A.M. before she reaches adulthood. As such, petitioner's claim that her recent conviction and fifteen-year sentence do not constitute a change in circumstances is unsupported.

Modifying petitioner's disposition to terminate her parental rights is supported by the record and is in A.M.'s best interests. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Further,

[w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

4

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 3. Taking into consideration the nature of petitioner's offense and the terms and length of her confinement, it is clear that petitioner will not be able to remedy the conditions of abuse and neglect on her own or with help. Petitioner shot and killed the child's father in her presence. She was convicted by a jury of voluntary manslaughter and was sentenced to fifteen years of incarceration. She will not be eligible for parole until A.M. reaches adulthood. Petitioner's incarceration prevents her from remedying the conditions of abuse in a reasonable amount of time in light of A.M.'s age.

Moreover, A.M., now seventeen years old, requested that petitioner's parental rights be terminated. A.M. testified that she loves petitioner, but that she wants to be adopted by her foster family with whom she has a strong bond. A.M. testified that her adoption will provide her with a safe and stable environment and a feeling of truly belonging with her foster family. A.M. described how she wanted to change her surname to her foster family's surname to achieve a sense of permanency. A.M. also reported that, by continuing under her legal guardianship, she fears that either petitioner or someone else can remove her from her home without her consent. A.M.'s therapist testified that A.M. put a great deal of thought into the matter and had the capacity to make such a decision. While petitioner claims that the circuit court was not obligated to comply with A.M.'s wishes, the circuit court found that the child was clear and logical in expressing her wishes, had spoken to numerous people about her desire to be adopted, and reiterated her reasons for wanting to be adopted, including the desire for permanency and traditional family ties. So, although the circuit court was not obligated to comply with A.M.'s request for termination of petitioner's parental rights, the circuit court was mandated to consider her wishes given her age and weighed her desires accordingly.

To the extent petitioner argues that less-restrictive alternatives to the termination of her parental rights were available, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

Based on the foregoing, it is clear that a material change of circumstances occurred and that modification of disposition is in A.M.'s best interests. The evidence as set forth above demonstrates that there is no reasonable likelihood that petitioner can correct the conditions of abuse and neglect in the near future. Additionally, termination of petitioner's parental rights is in A.M.'s best interests and will provide her with the stability and permanency she desires. Accordingly, we find no error in the circuit court's decision to modify disposition and terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison